IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TELEPHONE SCIENCE CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | Case No: 14 C 4369 |
| | ) | |
| v. | ) | Magistrate Judge Daniel G. Martin |
| | ) | |
| TRADING ADVANTAGE LLC, LARRY, LEVIN, and JOHN DOES 1-10 | ) ) ) | |
| Defendants. | ) | |

## ORDER

For the reasons stated below, Defendants' Motions to Compel [55, 56] are denied. Status hearing set for 2/26/2015 at 10:00 a.m. stands.

## STATEMENT

Plaintiff Telephone Science Corporation ("TSC") brings a claim under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, for thousands of calls allegedly made in violation of the TCPA by Defendants. TSC alleges that between March 18, 2014 and May 30, 2014, Defendants used an automatic telephone dialing system to make calls to 61 telephone numbers subscribed to by TSC without TSC's consent and for non-emergency purposes. TSC seeks up to $1,500 for every call made by Defendants. TSC has alleged 6,521 calls, totaling $9,781,500.00. Before the district court, Defendants have moved to dismiss the portion of TSC's Second Amended Complaint based on Section 227(b)(1)(A)(iii), arguing that Section 227(b)(1)(A) does not apply to calls to businesses. The remainder of TSC's Second Amended Complaint is based on Section 227(b)(1)(D), which prohibits using automatic telephone dialing systems to engage two or more of a business' telephone lines simultaneously.

TSC operates Nomorobo, a service that stops robocalls (calls delivering a prerecorded message). In 2013, Nomorobo was one of two winners of the FTC's first Robocall Challenge, a public contest to design a system to stop unsolicited marketing calls before they can ring through to the user. See FTC Announces Robocall Challenge Winners, http://www.ftc.gov/new-events/press-releases/2013/04/ftc-announces-robocall-challenge-winners. Nomorobo allows unwanted robocalls to ring the subscriber's telephone number once. Nomorobo uses simultaneous ringing to route calls to Nomorobo's telephone in addition to the subscriber's phone. The second line hangs up on illegal robocalls before they can ring through to the subscriber. Id. Nomorobo uses its technology to "blacklist" robocaller phone numbers and "whitelist" numbers associated with acceptable incoming calls. Id. TSC states that 143,000 persons are users of the Nomorobo calling service, and the Nomorobo service has blocked over 13,770,632 calls for its users.

TSC also operates a "honeypot" group of telephone numbers and the data gathered from the honeypot is "used to improve the robocall detection algorithm used to block millions of calls for hundreds of thousands of Nomorobo users." (Doc. 70 at 1). According to the FTC, a robocall honeypot is "an information system designed to attract robocallers, and help law enforcement

authorities, researchers, and others gain enhanced insight into robocallers' tactics." See FTC Announces Winner of "Zapping Rachel" Robocall Contest, http://www.ftc.gov/news-events/press-releases/2014/08/ftc-announces-winners-zapping-rachel-robocall-contest. In order for TSC's robocall detection algorithm to accurately detect high frequency robocalling patterns, it needs a large amount of data. (Doc. 72-2 at 1). To that end, TSC has bought over 65,000 telephone numbers from its telecommunications carrier Twilio to create a large data set for its research into high frequency robocalling, which it then uses to operate its Nomorobo business.

Twilio places all numbers that it purchases from larger phone companies into a virtual "holding tank," where the number of calls to that number is recorded for a period of time prior to assigning any number to a customer. (Doc. 72-2 at 1). Twilio wants to only assign phone numbers that are not receiving a lot of calls to their customers. Numbers that do not receive any calls during the period of time in the "holding tank" are considered "clean" and are assigned to Twilio's customers. Numbers that receive a lot of calls during the time period in the "holding tank" are considered "dirty" and are not assigned to Twilio's customers. TSC buys Twilio's "dirty" phone numbers for use in its honeypot. TSC uses proprietary algorithms and source code to operate Nomorobo and its honeypot. TSC analyzes its honeypot in order to detect high frequency robocalling patterns. The 61 numbers that are the subject of this lawsuit are part of TSC's "honeypot" group of numbers.

Defendants maintain that they only contact individuals who have placed calls to Trading Advantage in response to advertisements offering Trading Advantage's services and products. With one exception, Defendants assert that each of the phone numbers at issue in this case formerly belonged to an individual who contacted Trading Advantage, and then TSC acquired the subject numbers.[1] Defendants believe TSC is misusing the TCPA for personal profit. According to Defendants:

> Plaintiff has developed a scheme whereby the telephone numbers previously assigned to Trading Advantage's contacts (as well as tens of thousands of others) are "assigned" to Plaintiff. Plaintiff then waits for unsuspecting companies like Trading Advantage to continue calling these contacts which it believes have requested to be contacted. Once the calls sufficiently add up, Plaintiff then files suit, seeking to collect the TCPA's statutory penalties for its own profit.

(Doc. 55 at 9).

Defendants move to compel production of documents relating to the operation of TSC's Nomorobo business and "honeypot." TSC opposes Defendant's motion to compel on the grounds that the information Defendants seek is irrelevant to the claims and defenses in the case and production of such information would be unduly burdensome. TSC argues that information about its Nomorobo business is irrelevant because this case is not about phone calls made to the users of its Nomorobo service. TSC also states that it has produced a significant amount of information about its claims, including the phone numbers that were called by Defendants, the dates when each phone number was subscribed to by TSC, the service provider who assigned the subscribed numbers, the fact that TSC has no relationship with prior subscribers, and the persons who have

---

[1] Defendants state that they have no record of every calling at least one of the numbers at issue.

knowledge about the assignment of the numbers.

**DISCUSSION**

"Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Upon a showing of good cause, a court may order "discovery of any matter relevant to the subject matter involved in the action." Id. A court shall limit discovery if it determines the discovery sought to be unreasonably cumulative or duplicative, the party seeking discovery has had ample opportunity to obtain the information by discovery in the action, or the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(2)(C)(i)–(iii). Magistrate judges are granted broad discretion in addressing and resolving discovery disputes. Weeks v. Samsung Heavey Indus., Co., Ltd., 126 F.3d 926, 943 (7th Cir. 1997). With these principles in mind, the Court addresses Defendants' motion to compel.

Defendants broadly categorize the discovery requests at issue as follows: (1) information regarding TSC's revenues and profits from operating Nomorobo and the honeypot (First Document Request Nos. 5, 6, and 27, and Second Document Request Nos. 24, 25, 26, and 27); (2) information regarding TSC's corporate structure (First Document Request Nos. 2, 3, and 4); (3) information relating to the development of and mechanisms used to operate Nomorobo and the honeypot (First Document Request Nos. 22 and 25, and Second Document Request Nos. 14, 15, 28, and 30); (4) documents relating to the legal relationship between TSC and its customers (First Document Request Nos. 23 and 26); and (5) communications between TSC and the FTC or Twilio (Second Document Request Nos. 7, 8, 17, and 18). (Doc. 72 at 10).[2]

Defendants assert that the information they seek from TSC, its partners, and other third-parties regarding Nomorobo, the honeypot, and their practices is directly relevant to the claims and defense in this matter for several reasons. First, Defendants contend that TSC's use of "dirty" numbers in its honeypot dataset raises substantial questions about whether TSC is a "called party" under the TCPA. Second, Defendants argue that information relating to the operation of Nomorobo and the honeypot will bear directly on counterclaims Defendants intend to assert against TSC and possibly Twilio for violations of the California Unfair Competition Law and the Illinois Consumer Fraud Act based on illegal and unfair hoarding of telephone numbers. Third, Defendants claim that the information sought is relevant to their intended affirmative defenses of lack of standing and unclean hands. The Court finds all of Defendants' contentions unpersuasive and therefore, denies their motion to compel.[3]

---

[2] In their reply brief, Defendants narrowed their requests to not seek call detail records on the over 65,000 telephone numbers that make up TSC's honeypot, or the call detail records associated with the 143,000 Nomorobo customers. (Doc. 72 at 10).

[3] Defendants' motion raises two additional arguments. First, Defendants point out that TSC stated in response to Interrogatory No. 3 that it "did not request specific particular numbers for the subject telephone lines. Twilio assigned Plaintiff the 61 subject numbers." (Doc. 55, Exh. 3 at 4). From this, Defendants conclude that TSC is "suggest[ing] that these numbers were randomly assigned to it." (Doc. 55 at 5-6). In support of their motion to compel, Defendants argue that they are not required to accept TSC's assertion that the 61 numbers "were randomly assigned" and

A.     **"Called Party" Under the TCPA**

Section 227(b)(1)(A)(iii) of the TCPA prohibits any person from "mak[ing] any [non-emergency] call . . . using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to . . . any service for which the called party is charged for the call" without the "prior express consent of the called party." 47 U.S.C. § 227(b)(1)(A)(iii). In Soppet v. Enhanced Recovery Co., LLC, 679 F.3d 637, 643 (7th Cir. 2012), the Seventh Circuit defined the term "called party" in § 227(b)(1) as "the person subscribing to the called number at the time the call was made." Soppet involved two cellphone subscribers who were called by debt collectors working to collect a debt from the previous subscribers of those cell phone numbers. Id. at 639. The defendant in Soppet argued that "called party" should be interpreted as "the intended recipient of the call." Id. at 640. The Seventh Circuit reject the "intended recipient" definition, reasoning that "[t]he phrase 'intended recipient' does not appear anywhere in § 227, so what justification could there be for equating 'called party' with 'intended recipient of the call'?" Id.

In this case, Defendants maintain that TSC is not a "called party" under the TCPA. Defendants seek to distinguish this case from Soppet on the ground that TSC is a "telecommunications business that hoards tens of thousands of telephone numbers in a database for analysis so that it can provide a different telecommunications service to consumers." (Doc. 72 at 5). Defendants assert that TSC "is no more a 'called party' under the TCPA than any telecommunications company that happens to register telecommunications traffic through its network." Id. at 6.

The Court expresses no view on the merits of Defendants' theory. Even if the argument advanced by Defendants is valid and Soppet does not control, the problem here is that Defendants do not tie their theory to their specific discovery requests. Defendants indicate that they are entitled "to full discovery on the operation of Nomorobo and the honeypot in order to defend themselves against Plaintiff's allegation that it is the 'called party' under the TCPA" (doc. 72 at 6), but fail to identify specifically why this information is relevant. For example, Defendants have made no effort to explain why they believe information relating to the development of and mechanisms used to operate Nomorobo and the honeypot is relevant to the determination of whether TSC is a "called party" for purposes of § 227(b)(1). Neither do Defendants articulate how information regarding TSC's revenues and profits from operating Nomorobo and the honeypot and its corporate structure would be relevant to the "called party" inquiry. Defendants also fail to state specifically why they

---

therefore, they are entitled to "full discovery" relating to Nomorobo and TSC's honeypot to test the veracity of TSC's claim. The Court is not sure of the relevance of this particular fact. In any event, after the filing of the motion to compel, TSC provided Defendants with a document describing specifically how TSC obtained the numbers at issue from its phone carrier (Twilio). (Doc. 72, Exh. 2). Defendants' reply brief does not raise any issue with TSC's explanation of how it came into possession of the 61 telephone numbers, and the Court assumes the issue of TSC's acquisition of the subject telephone numbers is resolved. Second, Defendants' motion states, without citation to supporting evidence, that their "counsel has been informed by the service provider that many of [call detail] records [regarding the subject 61 telephone numbers] do not exist because they have been deleted on the service provider's website." (Doc. 55 at 12). TSC's response states that it "has not deleted data from its service provider's website about the relevant phone calls." (Doc. 70 at 6). Because Defendants do not mention this issue in their reply brief, the Court assumes they are not pursuing the matter.

need documents relating to the legal relationship between TSC and its Nomorobo customers and the communications between TSC and the FTC or Twilio or how such information would be relevant to whether TSC is a "called party" under the TCPA. Merely asserting that resolution of the "called party" question "will turn on understanding how Plaintiff is using the phone numbers at issue and for what purpose" (doc. 72 at 5) is not sufficient. On this record, the Court rejects Defendants' argument that the requested discovery is relevant to whether TSC is a "called party" under the TCPA.

### B.  Unfair Business Practices Counterclaims

Defendants next contend that the requested discovery is relevant to Defendants' intended counterclaims for violations of the California Unfair Competition Law (UCL) and the Illinois Consumer Fraud Act (ICFA), which prohibit unfair business practices. Defendants argue that TSC's actions "in hoarding phone numbers for use in the honeypot for personal gain violates both." (Doc. 72 at 6). Defendants assert that TSC and its service provider appear to have violated Federal Communications Commission regulations which specifically prohibit hoarding toll free numbers. Defendants' theory is also that "TSC's collection of more than 65,000 previously-subscribed phone numbers violates public policy, and directly contradicts the basic principles of the FCC's implementation of the North American Numbering Plan." (Doc. 72- at 6-7). According to Defendants, TSC's "violation of specific regulatory provisions and public policy give rise to claims under the UCL and ICFA." Id. at 7.

Defendants have not specifically demonstrated why each category of documents they seek is relevant to their proposed unfair business practices counterclaims. The scope of discovery is broad, but discovery must be relevant to the claim or defense of any party. Again, Defendants have failed to adequately explain why each category of information they seek is relevant to their unfair business practices counterclaims. Defendants broadly claim that "[u]nderstanding the technological operations of Plaintiff's Nomorobo and honeypot business, as well as the revenues collected from each, are critical to establishing Defendants' counterclaims." (Doc. 72 at 7). Why? Defendants don't explain how this information would be used in support of their proposed counterclaims. Defendants also assert that they need TSC's communications with the FTC because "[w]hether the FTC is aware that Plaintiff is hoarding phone numbers is relevant to Plaintiff's claim that the FTC endorses its activities." Id. Defendants make no effort to explain or support their assertion that the FTC's knowledge of these issues is relevant to their intended counterclaims. Without a minimal showing of relevance to Defendants' proposed counterclaims, the Court cannot find that the information sought is discoverable.

### C.  Prudential Standing Under the TCPA

Lastly, Defendants argue that the discovery they seek is relevant to their intended affirmative defenses of lack of standing and unclean hands. Defendants state that they intend to argue that TSC lacks prudential standing under the TCPA. In support of this theory, Defendants cite just one case–Cellco Partnership v. Wilcrest Health Care Mgmt. Inc., 2012 WL 1638056, at *7-9 (D.N.J. May 8, 2012). In Cellco, the district court found that plaintiffs Verizon and OnStar, as telecommunications providers, lacked prudential standing to assert TCPA violations on behalf of themselves, as opposed to on behalf of their subscribers, because they "do not fall into the zone of interests protected by the TCPA." Id. at *8. The Cellco court pointed out that the only reason the plaintiff companies received a large volume of calls was "due to the nature of their business,

which is providing telecommunications services rather than consuming them." Id. at *9 The district court reasoned that the plaintiff companies did not fall within the "zone of interests" protected by the TCPA because their damages were not of the "vexatious and intrusive nuisance nature sought to be redressed by Congress in enacting the TCPA, but rather [were] indirect, economic, and inherent to their business." Id. at *8.

Defendants argue that just like the plaintiff companies in Cellco, TSC is improperly attempting to collect damages for calls it received in the course of conducting its business. Defendants explain:

> Plaintiff's business model is built around the assumption that it will receive telemarketing calls–indeed Nomorobo and the honeypot would not exist but for the receipt of telemarketing calls. Plaintiff is collecting tens of thousands of telephone numbers so that it may analyze those numbers in a dataset, create an algorithm that predicts purported telemarketing calls, and use that algorithm in the operation of its Nomorobo business. At the same time, Plaintiff waits for "calls" to the numbers it has hoarded to add up, then files suit under the TCPA, seeking to collect millions of dollars for "injuries" it sustained in the course of developing its business.

(Doc. 72 at 9).

The information presented in Defendants' briefs demonstrates they have a relevant understanding of TSC's Nomorobo business and its honeypot. Defendants have not shown what specific additional information concerning Nomorobo and TSC's honeypot would further their attempt to prove TSC's lack of prudential standing. Defendants do not need further information to show that TSC is a business, rather than an individual consumer, and the nature of TSC's business. Defendants argue that "[i]nformation relating to Plaintiff's corporate structure, the mechanisms used to operate Nomorobo and the honeypot, the revenue collected from each, Plaintiff's development of each, and the way in which each relate to the acquisition and use of the subject telephone numbers are crucial to establishing Defendants' lack of standing and unclean hands defenses." (Doc. 72 at 9).[4] Again, Defendants have not explained why these particular categories of information are crucial to exploring the issue of standing.

## **CONCLUSION**

Because Defendants argue in generalities and do not specifically address the relevancy of the particular documents sought to the claims or defenses in this case, the Court denies Defendants' motions to compel [55, 56].

**Date: February 17, 2015**   /s/ Daniel G. Martin

---

[4] Defendants cite no authority for the proposition that the unclean hands doctrine applies to claims under the TCPA.